UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**KEVIN GLOWICKI,**

**Plaintiff,**

**v.** **Case No. 26-CV-1564**

**SOJOURNER FAMILY PEACE CENTER, INC., *et al.*,**

**Defendants.**

---

**ORDER ON MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE AND SCREENING COMPLAINT**

---

On September 10, 2026, Kevin Glowicki filed a ten-count, *pro se* complaint against Sojourner Family Peace Center, Inc. ("Sojourner"); Sojourner Family Peace Center Foundation, Inc. ("Sojourner Foundation"); several Sojourner staff members; and ten unidentified defendants. (Docket # 1.) Additionally, Glowicki filed a motion for leave to proceed without prepaying the filing fee (*in forma pauperis*). (Docket # 2.) Because I find that Glowicki is indigent for purposes of the federal *in forma pauperis* statute, his motion for leave to proceed without prepaying the filing fee will be granted. I also find that, at this stage, Glowicki sufficiently states his claims. His complaint may proceed.

**ANALYSIS**

*1. Request for Leave to Proceed Without Prepayment of the Filing Fee*

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to give indigent litigants meaningful access to the federal courts while at the same time prevent frivolous, malicious, or repetitive lawsuits filings. *Nietzke v. Williams*, 490 U.S. 319, 324 (1989). To

authorize a litigant to proceed *in forma pauperis*, the court must first determine whether the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). Second, the court must determine whether the action is frivolous or malicious, fails to state a claim on which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

In his request to proceed without prepaying the filing fee, Glowicki states that he is unemployed and has no source of income. (Docket # 2 at 1, 2, 4.) He is single with one dependent, for whom he owes $100 in child support each month. (*Id.* at 1.) Glowicki also reports that he has no assets. (*Id.* at 3–4.) While he indicates that he has no expenses, as aforementioned, child support is at least one expense he bears. (*Id.* at 1, 2.) Based on his statements, I conclude Glowicki is indigent for purposes of the *in forma pauperis* statute. His request to proceed without prepaying the filing fee is granted.

*2. Request for Leave to Proceed Without Prepayment of the Filing Fee*

2.1 Legal Standard

I consider next whether Glowicki's complaint is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. The standards for reviewing dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) are the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6). *See DeWalt v. Carter*, 224 F.3d 607, 611–12 (7th Cir. 2000). In evaluating whether a plaintiff's complaint fails to state a claim, a court must take the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Id.* at 612. Although a complaint need not contain "'detailed factual allegations,'" a complaint that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### 2.2 Glowicki's Factual Allegations

Glowicki alleges that he is a victim of domestic violence. (Docket # 1 at 5.) Following a July 2026 incident, Glowicki enrolled in the residential program at Sojourner, a domestic violence shelter (*id.* at 3, 5); however, Sojourner subsequently removed him from its program on September 2 (*id.* at 8). Glowicki's claims stem from his stay and removal.

First, Glowicki alleges Sojourner discriminated against him based on his disabilities and his sex. (*Id.* at 15, 19.) Glowicki suffers from a back injury and complex post-traumatic stress disorder ("C-PTSD"). (*Id.* at 15.) He claims that Director Sam Mischker refused to give him a suitable chair for his back. (*Id.*) Additionally, he asserts that Sojourner staff knowingly triggered his C-PTSD by sliding papers under his door and continuing to use the phrase "house meeting," despite his requests to stop. (*Id.* at 15–16.) Accordingly, Glowicki alleges that he did not receive "meaningful access" to the program. (*Id.* at 16.)

Glowicki further alleges that Sojourner routinely denies male residents the same resources it offers to female residents. (*Id.* at 19.) He states that, while Sojourner provided him "basic shelter facilities," it denied him "meaningful access" to other forms of support. (*Id.*) Sojourner also refused to help a different male resident repair his vehicle because of the man's sex. (*Id.*)

Next, Glowicki alleges Sojourner "intercepted" and "used" private communications. (*Id.* at 7.) Glowicki is an "independent investigative journalist" by trade. (*Id.* at 1.) While residing at Sojourner, he began investigating the shelter's "policies, procedures, [and] resources." (*Id.* at 5–6.) He believes that Sojourner "intentionally intercepted and recorded

[his] private communications concerning his [investigation] . . . through an undisclosed audio-surveillance system." (*Id.* at 6–7.) He further contends that Sojourner's knowledge of his investigation is "materially connected" to his September 2 removal. (*Id.* at 6, 8.) These allegations are based on a "confidential journalist source or sources" not identified in his complaint. (*Id.* at 6–7.)

Glowicki goes on to allege that Sojourner wrongfully removed him. (*Id.* at 8.) On September 2, 2026, Defendants Phil Slater and Sam Mischer informed Glowicki that "his shelter placement was being terminated based upon reports that he had threatened someone." (*Id.*) Glowicki denied making any threat but was not given a meaningful opportunity to challenge the accusation. (*Id.* at 9.) He further alleges that Slater and Mischer were aware of his C-PTSD but proceeded in a way that triggered him. (*Id.* at 8.)

Finally, Glowicki alleges Sojourner kept and spread false information about him. (*Id.* at 11–13, 21.) Specifically, Sojourner published in its institution-wide database a photo of Glowicki's DV offender, next to the statement "who really is not." (*Id.* at 11.) Glowicki contends that this statement was an allegation challenging his "victimization." (*Id.*) Additionally, on September 2, Defendant Renee Louve recorded in the same database an allegation that Glowicki was planning to "do something to the building on September 11." (*Id.* at 12.) This accusation was disseminated a day later when Slater issued a BOLO alert for Glowicki, directing recipients not to let him into the facility. (*Id.*) Glowicki claims a similar oral warning was also given to residents. (*Id.* at 13.)

### 2.3 Glowicki's Ten-Count Complaint

In his complaint, Glowicki lays out ten separate claims. I address each in turn. Because Glowicki is *pro se*, I construe his complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

#### 2.3.1 Disability Discrimination Claims (Counts I and II)

First, Glowicki alleges that Sojourner discriminated against him because of his disabilities. (Docket #1 at 15, 17.) He brings claims under both Section 504 of the Rehabilitation Act 1973 and Title III of the Americans with Disabilities Act ("ADA"). While both statutes prohibit disability discrimination, Section 504 governs programs receiving federal financial assistance, and Title III applies to private entities operating public accommodations. 29 U.S.C. § 794; 42 U.S.C. § 12182(a).

As to Glowicki's claim under the Rehabilitation Act, a program receiving federal financial assistance may not discriminate against a person based on disability. 29 U.S.C. § 794. To state a *prima facie* case of such discrimination, a plaintiff must show that: (1) he suffers from a disability as defined by statute; (2) he is otherwise qualified to participate in the program; (3) he was excluded from participating in or denied the benefit of the program solely because of his disability; and (4) the program receives federal financial assistance. *Id.* § 794(a); *Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 484 (7th Cir. 2019).

Federal law defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1)(A). An impairment "substantially limits" an activity if it "significantly restricts the condition, manner, or duration" under which the activity can be performed. *See Squibb v. Memorial Medical Center*, 497 F.3d 775, 781 (7th Cir. 2007).

Here, Glowicki contends that he is disabled from his back injury and C-PTSD. (Docket # 1 at 15.) Due to his back injury, he requires certain "suitable" seating to sit without physical discomfort. (*Id.*) And, due to his C-PTSD, Glowicki experiences "heightened physiological activation, hypervigilance, difficulty processing multiple demands under severe stress, and stress related stuttering," impacting his ability to communicate, amongst other things. (*Id.* at 16.) Indeed, both sitting and communicating constitute "major life activities." *See Squibb*, 497 F.3d at 784; 42 U.S.C. § 12102(2)(A). While Glowicki will later need to provide additional evidence of how he is "substantially limit[ed]," he sufficiently alleges for the purposes of his complaint that he is disabled.

Glowicki additionally asserts that failure to provide his disability-related needs denied him reasonable accommodation and meaningful access to Sojourner's federally-funded program, in which he was "otherwise qualified" to participate. (Docket # 1 at 15–16.) Liberally construing these allegations, Glowicki sufficiently states a claim under the Rehabilitation Act.

As to his ADA claim, a private entity operating a public accommodation may not discriminate on the basis of disability. 42 U.S.C. § 12182(a). To prevail on an ADA claim, a plaintiff must show that: (1) he suffers from a disability as defined by statute; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against him because of his disability. *See A.H. by Holzmueller v. Illinois High School Association*, 881 F.3d 587, 592–96 (7th Cir. 2018). Social service center establishments are included within the meaning of "public accommodation." 42 U.S.C. § 12181(7)(K).

Here, too, Glowicki sufficiently alleges a discrimination claim. He again asserts that he is disabled, and that Sojourner refused to accommodate his disabilities. *See Novak v. Board*

*of Trustees of Southern Illinois University*, 777 F.3d 966, 974 (7th Cir. 2015) (noting that the Rehabilitation Act and the ADA define "disability" in the same way). Additionally, he states that Sojourner "operate[s] a domestic violence shelter and associated social-services facilities," which are public accommodations subject to the ADA. (Docket # 1 at 17.)

#### 2.3.2 Sex Discrimination Claim (Count III)

Glowicki next sues Sojourner for sex discrimination. (Docket # 1 at 19.) Title IX prohibits programs receiving federal financial assistance from discrimination on the basis of sex. 20 U.S.C. § 1681(a). Congress explicitly subjected programs receiving assistance under the Family Violence Prevention and Services Act ("FVPSA") to Title IX. 42 U.S.C. § 10406(c)(2)(A).

Title IX gives plaintiffs an implied right of private action. *See Jackson v. Birmingham Board of Education*, 544 U.S. 167, 173 (2005). To sufficiently plead a Title IX claim, a plaintiff must allege that: (1) he was intentionally excluded from participation in or denied the benefits of the program; (2) the program receives federal financial assistance; and (3) the exclusion was based on sex. *See id.*

In this case, Glowicki alleges that Sojourner receives funding under the FVPSA and is thus subject to Title IX's prohibition. (Docket # 1 at 19.) He further alleges that Sojourner denies male residents, including himself, the same resources as female residents. (*Id.*) And, on one occasion, Sojourner refused to help a male resident repair his vehicle *because of* the man's sex. (*Id.*) Glowicki's sex discrimination claim is bare bones, as he does not specify from which programs he was excluded. However, for the purposes of this screening stage, it is sufficient.

### 2.3.3 Claims of Unlawful Interception, Disclosure, and Use of Private Communications (Counts IV and VIII)

The Electronic Communications Privacy Act ("Wiretap Act") is primarily a criminal statute; however, it also provides a civil cause of action to "any person whose . . . communication is intercepted, disclosed, or intentionally used." 18 U.S.C. § 2520(1)(a). Accordingly, a plaintiff may sue "the person or entity which engaged in that violation." *See, e.g.*, *DirecTV, Inc. v. Regall*, 327 F.Supp.2d 986, 987 (E.D. Wis. July 28, 2024).

Wisconsin's Electronic Surveillance Control Law ("WESCL") is analogous to the federal Wiretap Act. *See Griffin v. City of Milwaukee*, 74 F.3d 824, 827 (7th Cir. 1996). Accordingly, it, too, gives "any person whose wire, electronic, or oral communication is intercepted, disclosed, or used" a civil cause of action against the perpetrator. Wis. Stat. 968.31(2m).

In two counts, Glowicki alleges that Sojourner intentionally intercepted his oral communications via an undisclosed audio-surveillance system. (Docket #1 at 20, 25.) He further alleges that its contents were disclosed to others. (*Id.*) Although Glowicki does not reveal his "confidential journalistic source or sources," he sufficiently states a claim under both the Wiretap Act and the WESCL.

### 2.3.4 The Violence Against Women Act (Count V)

Glowicki alleges that Sojourner violated several "nondiscrimination and victim-confidentiality obligations" under the Violence Against Women Act ("VAWA"). (Docket # 1 at 21.) But in his own words, Glowicki "does not assert [a] . . . private cause of action" under these provisions. (*Id.*) Rather, they are "pleaded as applicable legal context and as material to the independently enforceable claims for disability discrimination, unlawful interception, invasion of privacy, and other actionable conduct." (*Id.*)

VAWA contains no civil remedy provision. *See U.S. v. Mitchell*, 299 F.3d 632, 634 (7th Cir. 2002). Nor does Glowicki appear to assert one. Accordingly, Glowicki fails to state a claim in Count V.

2.3.5 Defamation Claims (Counts VI and VII)

Under Wisconsin law, to successfully state a claim for defamation, a plaintiff must allege that the statement in question: (1) is false, (2) was communicated to a third party, (3) is unprivileged, and (4) is defamatory. *Hart v. Bennet*, 2003 WI App 231, ¶ 21, 267 Wis.2d 919, 941, 672 N.W.2d 306, 317;*Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 806 (W.D. Wis. Feb. 5, 2015). A statement that "tends to harm one's reputation" is considered defamatory. *Hart*, 2003 WI App 231, ¶ 23. Additionally, repeating or republishing defamatory statements can also lead to liability for defamation. *Id.*

In Count VI, Glowicki alleges that Sojourner published a photo of Glowicki's DV offender, next to the statement "who really is not." (Docket # 1 at 22.) Glowicki avers that this accusation is false, unprivileged, and defamatory. (*Id.*) The note was published to Sojourner's institution-wide database, where "persons other than [himself]" could—and actually did—adopt, transmit, or repeat the accusation. (*Id.* at 22–23.) This injured his reputation, portraying him as someone who fabricated his domestic-violence "victimization." (*Id.* at 22.) For this, he sues Sojourner, the person who authored the note, and any defendants who subsequently adopted or republished the assertion. (*Id.*) While it is unclear whether Glowicki alleges that the note was published to a third party outside of Sojourner, at this stage, Glowicki sufficiently states a defamation claim on these facts.

As to Count VII, Glowicki alleges that Defendant Renee Louve recorded an allegation that Glowicki was "planning to do something to the building on 9/11." (*Id.* at 23.) Glowicki

denies this accusation. (*Id.*) It, too, defamed him, as it "portrayed him as a person presenting a serious threat to the facility and its occupants." (*Id.*) This allegation was also published to Sojourner's institutional database and communicated by personnel. (*Id.* at 23–24.) For this, he sues Louve, as well as anyone who participated in its publication or adoption. (*Id.* at 23.)

Glowicki further alleges that Salter subsequently issued a BOLO directing residents not to permit Glowicki into the building. (*Id.* at 24.) Glowicki contends that this warning communicated an "adverse institutional security characterization of him." (*Id.*) He sues Salter and any person who authorized, adopted, or disseminated this allegation. (*Id.* at 24.) Again, while it is unclear whether Glowicki alleges that these assertions were published to third parties, construed liberally, Glowicki sufficiently alleges defamation on these facts.

#### 2.3.6 Invasion of Privacy Claim (Count IX)

Wisconsin state law recognizes a right to privacy. Wis. Stat. § 995.50(1). A person whose privacy is "unreasonably invaded" may sue to enforce their right. *Id.* To be actionable, the invasion of privacy must be "of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private . . . ." *Id.* at § 995.50(2)(am)(1). To plead a reasonable expectation of privacy, a plaintiff must allege: (1) conduct suggesting that he subjectively sought to preserve something as private, and (2) that society recognizes such expectation as reasonable. *Wisconsin State Senate v. City of Green Bay*, 719 F. Supp. 3d 869, 878 (E.D. Wis. Feb. 27, 2024) (citing *Bond v. United States*, 529 U.S. 334, 338 (2000)).

Glowicki alleges that his privacy was invaded when Sojourner electronically intercepted his private communications through its undisclosed audio-surveillance system. (Docket # 1 at 27.) Glowicki believed these communications would remain private: access to the shelter was controlled; residents entered with "heightened needs for confidentiality" due

to the program's sensitive nature; and Sojourner did not inform residents about the audio system. (*Id.* at 27–28) To the contrary, personnel affirmatively told residents that the cameras did not capture audio. (*Id.* at 27.) As in *Wisconsin State Senate*, Glowicki asserts that there were no signs or warnings to indicate otherwise. 719 F.Supp.3d at 880 (finding that individuals who retreated to a location away from others, where no signs warned that their conversation might be recorded, were entitled to assume their conversation would not be intercepted). Thus, Glowicki sufficiently states a claim for invasion of privacy.

2.3.7 Negligent Supervision and Retention Claim (Count X)

Finally, Glowicki claims that Sojourner negligently supervised and/or retained personnel responsible for resident records, security communications, disability accommodation, and removal decisions. (Docklet # 1 at 29–30.) To establish a *prima facie* case of negligent supervision, a plaintiff must show that: (1) an employer owed him a duty of care; (2) the employer breached this duty; (3) an employee's wrongful act was a cause of his injury; and (4) an act or omission of the employer was a cause of the employee's wrongful act. *Sigler v. Kobinsky*, 2008 WI App 183, ¶ 9, 314 Wis. 2d 784, 791, 762 N.W.2d 706, 709. Such a duty arises when it is "foreseeable" that an employee's act might cause harm. *See id.* ¶ 10.

Here, Glowicki argues Sojourner owed him a duty of care. (Docklet # 1 at 29.) Sojourner knew of its employees' misconduct by Glowicki's "repeated requests for assistance and accommodation," "complaint concerning sex-based denial of resources," "surveillance concerns," and "objections to the circumstances of his removal."(*Id.*) As a result of the misconduct, Glowicki alleges that he suffered reputational injury, invasion of privacy, and loss of shelter access, amongst other things. (*Id.*) And Sojourner's failure to exercise

supervisory care was a "substantial factor" in its employees' misconduct. (*Id.*) At this stage, Glowicki sufficiently states a claim of negligent supervision.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Glowicki's motion for leave to proceed without prepayment of the filing fee (Docket # 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Glowicki is permitted to move forward with his complaint.

**FINALLY, IT IS ORDERED** that, pursuant to Fed. R. Civ. P. 4(c)(3), the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the summons, and this order upon Defendants. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a)(1)(A) & (b). The current fee for waiver-of-service packages is $8 per item. 28 C.F.R. § 0.114(a)(2). Although Congress requires the Court to order service by the United States Marshals Service because *in forma pauperis* plaintiffs are unable to pay the filing fee, it has not made any provision for these fees to be waived either by the Court or by the United States Marshals Service.

Dated at Milwaukee, Wisconsin this 6th day of October, 2026.

BY THE COURT

Nancy Joseph

NANCY JOSEPH
United States Magistrate Judge